## UNITED STATES DISTRICT COURT DISTRICT OF MAINE

**David T. Marrett and Sandy Marrett,**
                                    Plaintiffs,

v.

**Aroostook County Federal Savings & Loan,**
**Progressive Realty, Beth Henderson,**
**Justice B. Mallonee, Marden, Dubord,**
**Bernier & Stevens, P.A. LLC,**
**Monaghan Leahy, LLP, and**
**Zurich Insurance Company,**
                                    Defendants.

Case No. _____


Judge: _____


## **COMPLAINT**

### INTRODUCTION

This case is not just about a homeowner's battle to protect their home; it represents a much larger fight against the systemic exploitation that has plagued small towns like Caribou, Maine, for generations. In Caribou, powerful institutions—banks, brokers, insurance companies—have operated with impunity, exploiting vulnerable residents under the protection of local influence and judicial bias. This complaint challenges the entrenched system that has allowed these abuses to continue unchecked, seeking not only justice for the Plaintiff but also a catalyst for systemic reform that will protect others in similar situations.

### PARTIES

1. **Plaintiff: David T. Marrett and Sandy J. Marrett**, individuals residing in East Longmeadow, MA, and owners of 35 York Street in Caribou.

2. **Defendant: Aroostook County Federal Savings & Loan** A financial institution with its principal place of business in Caribou. At all relevant times, Aroostook County Federal Savings & Loan was the servicer of the Plaintiff's mortgage.

3. **Defendant Zurich Insurance Company**: An insurance company with its principal place of business in Illinois. Zurich issued and maintained a force-placed insurance policy on the Plaintiff's property.

4. **Defendant Marden, Dubord, Bernier & Stevens, P.A. LLC**: A law firm with its principal place of business in Waterville. This firm represented Aroostook County Federal Savings & Loan and was involved in the submission of the void state court order to the federal court.

5. **Defendant Monaghan Leahy, LLP**: A law firm with its principal place of business in Portland. This firm represented Aroostook County Federal Savings & Loan in the foreclosure proceedings.

6. **Defendant Progressive Realty** A real estate company with its principal place of business in Caribou. It is the real estate company that was engaged to handle the sale of the Plaintiffs' property.

7. **Defendant** Beth Henderson is an employee of Aroostook County Federal Savings & Loan and works for Progressive Realty, creating a significant conflict of interest. She was directly involved in actions leading to the destruction of the Plaintiffs' home.

8. **Defendant** Justice B. Mallonee is a judge of the Penobscot Superior Court in Maine.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction pursuant to **28 U.S.C. § 1331**, as the action arises under the laws of the United States, including the Real Estate Settlement Procedures Act (RESPA), **12 U.S.C. § 2605**, and **42 U.S.C. § 1983** for violations of constitutional rights.

10. This Court also has jurisdiction under **28 U.S.C. § 1332** (diversity of citizenship) because the Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Court has supplemental jurisdiction over state law claims pursuant to **28 U.S.C. § 1367**, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this district under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claim occurred within this district, and the Defendants conduct business here.

## FACTUAL BACKGROUND

**1. Initial Loan and Foreclosure Actions**

13. In early 2021, David T. Marrett was diagnosed with cancer, a devastating diagnosis that immediately affected the family's ability to keep up with their mortgage payments. The Plaintiffs fell 75 days behind on their payments and informed the bank of their situation.

14. During a phone call with the bank, the Plaintiffs informed them of their decision to return home and convert the house into a two-family residence, a move intended to create passive income and stabilize their finances. The bank acknowledged this communication.

15. Despite this knowledge, the bank issued a notice to cure after the Plaintiffs were only 75 days late on their mortgage, in violation of RESPA, which requires the bank to wait until a borrower is at least 120 days late before initiating foreclosure.

16. The notice to cure also included a pre-acceleration of a portion of the mortgage related to a 2020 forced refinancing, which was illegal as it demanded payment for a debt that was not yet due.

## 2. Listing the Home for Sale Under Duress

17. On or about October 25, 2021, the Plaintiffs, unable to cure the default or obtain legal representation, listed their home for sale due to the substantial equity they had accumulated in the property.

18. The Plaintiffs informed the bank of their decision and engaged Cathy Duffy, owner of Progressive Realty, to manage the sale.

19. Just two weeks later, the bank offered the Plaintiffs a deed in lieu of foreclosure, an offer that seemed designed to undermine their efforts to sell the home independently and capture the equity for themselves. **(See Appendix A)**

20. The Plaintiffs forwarded the bank's offer to their broker, Cathy Duffy, who assured them she would handle the matter, but the bank manager, Beth Henderson, persistently pressured the Plaintiffs for a response.

### Unauthorized Actions and Escalation

21. In an email dated November 18, 2021, Beth Henderson informed the Plaintiffs that the bank had taken the liberty of sending a representative, along with a technician, to their

property to restore water services and arrange for an oil delivery to restart the boiler

system. This was done without the Plaintiffs' knowledge or consent. **(See Appendix B)**

22. Following the receipt of Beth's email, the Plaintiff immediately called Cathy Duffy, who

advised the Plaintiff to accept the offer.

23. Cathy Duffy's advice, delivered immediately after Beth's email, did more than raise

suspicions—it unequivocally exposed the collusion between Cathy Duffy and Beth

Henderson.

24. Their coordinated efforts were not just to undermine the Plaintiff's independent sale of

the property but to orchestrate a calculated scheme aimed at stripping the Plaintiff of their

hard-earned equity.

25. This blatant conspiracy was designed to rob the Plaintiff of their rightful ownership and

financial security, revealing a predatory plot that had been carefully devised to exploit the

Plaintiff's vulnerable situation.

26. The Plaintiffs immediately recognized this as a calculated move to exert control over the

Plaintiff's home and destabilize their efforts to sell the property.

27. The involvement of Beth Henderson, who was later discovered to be working for

Progressive Realty, suggested a coordinated effort to strip the Plaintiffs of their property

rights.

28. After the Plaintiffs declined the bank's offer of a deed in lieu of foreclosure and informed

the bank of their intent to pursue legal action, the bank's behavior shifted noticeably. The

bank ceased all communication regarding the upkeep of the property and requested that

Caribou Utility District forward all future water bills for the Plaintiffs' home, located at

35 York Street, directly to the bank.

**Foreclosure Proceedings and Judicial Misconduct**

29. On January 11, 2022, the Plaintiffs, under duress and seeking to resolve the mortgage issues, sent a 30-day demand to the bank, as required by Maine state law, to address the defaults and avoid foreclosure. **(Appendix C)**

30. On February 10, 2022, the bank finally responded to this demand, dismissing the Plaintiffs' concerns and continuing to move forward with foreclosure proceedings.

    **(Appendix D)**

31. What the Plaintiffs did not know at the time was that the bank had already filed for foreclosure on January 10, 2022—just one day before receiving the Plaintiffs' demand letter.

32. This critical information was deliberately withheld from the Plaintiffs during their correspondence.

33. To make matters worse, the bank did not serve the Plaintiffs with the foreclosure complaint until February 16, 2022, nearly a month after it was filed.

34. This calculated delay, coupled with the bank's failure to disclose the pending foreclosure, underscores a pattern of deceit and manipulation designed to prevent the Plaintiffs from taking timely legal action. This deceitful withholding of information was just the beginning of the bank's efforts to undermine the Plaintiffs' rights and strip them of their home.

35. In response to the foreclosure complaint, the Plaintiffs submitted their answer and counterclaim on March 14, 2022, formally challenging the bank's actions and asserting their rights.

36. Despite this, the bank, on March 21, 2022, proceeded to answer the counterclaim and a discovery deadline was set for July 25, 2022. This series of events highlights the ongoing struggle of the Plaintiffs to protect their home and equity against a well-coordinated effort by the Defendants to foreclose on the property unjustly.

**Destruction of the Home**

37. On or about May 16, 2022, the Plaintiffs' mother visited the property at 35 York Street and noticed the sound of running water. Unable to access the property because her key no longer worked, she immediately contacted the Caribou Utilities District (CUD) to have the water shut off.

38. Upon hearing of this, Plaintiff Sandy Marrett flew to Maine to assess the situation and discovered that the home had been destroyed due to extensive water damage.

39. **The devastation was overwhelming, with 1.8 million gallons of water—more than the combined capacity of the three water towers in Caribou—having flowed through the property, causing catastrophic damage. (Appendix E)**

40. The water damage was a direct result of the bank's actions in November 2021, where they had restored water and oil services without the Plaintiffs' knowledge or consent.

41. Following the Plaintiffs' refusal of the deed in lieu of foreclosure, the bank ceased all maintenance on the property, including failing to ensure that the water was shut off after stopping oil deliveries.

42. The Plaintiffs filed a claim with Zurich Insurance using the online portal. During the claim process, the Plaintiffs learned that the bank had already opened a claim in April 2022 under their names but listed the bank's address. **(Appendix F)**

43. On May 31, 2022, Zurich Insurance escalated their evasive tactics by sending the Plaintiffs an email stating that their insurance claim had been closed, without providing any formal reason for the denial. **(Appendix G)**

44. This abrupt and unexplained closure occurred after the Plaintiffs had submitted a claim for the extensive water damage that had completely destroyed their home.

**Harassment and Legal Intimidation by Dubord Law Firm**

45. The timing and manner of Zurich's response, particularly the lack of transparency, not only compounded the Plaintiffs' distress but also set the stage for further harassment and legal intimidation by the Dubord Law Firm, which Zurich retained shortly thereafter to defend against the Plaintiffs' rightful claims.

46. Just two weeks later, on June 17, 2022, the Plaintiffs were inundated with a series of mailings from the high-powered law firm Marden, Dubord, Bernier & Stevens, P.A. LLC (Dubord), which had been hired by Zurich to defend against the Plaintiffs' claims.

47. Despite being retained specifically to address the Plaintiffs' legitimate claims, Dubord never provided a legal basis for the denial of the insurance claims.

48. Instead, their focus was on a campaign of intimidation and obstruction, aimed at overwhelming the Plaintiffs and preventing them from pursuing their amended counterclaim.

49. The tone of these communications was condescending and dismissive, addressing the Plaintiffs as "Dear Folks," an attempt to trivialize the gravity of their situation and undermine their credibility.

50. Once the Plaintiffs submitted their amended counterclaim on August 1, 2022, detailing the destruction of their home and additional violations, the judge, rather than addressing the merits of the case, recused himself and transferred the case out of the county.

51. This sudden recusal raised significant concerns about the fairness and impartiality of the judicial process.

**The 26(g) Conference and Federal Court Proceedings**

52. As the Plaintiffs continued to push forward, they faced significant challenges during the 26(g) conference on November 8, 2022. Representing themselves as pro se litigants, the Plaintiffs were met with hostility from the Defendants' attorneys, who asserted false claims and manipulated the judicial process.

53. One such claim was that the Plaintiffs' motion to amend their counterclaim was illegal, a baseless assertion that Justice B. Mallonee failed to correct, further contributing to the biased and intimidating environment.

54. The Plaintiffs filed a Notice of Removal to federal court on January 6, 2023, in a bid for impartiality and justice.

**Federal Court Proceedings and the Clerk's Missteps**

55. After the Plaintiffs filed their Notice of Removal to federal court, confusion ensued due to an oversight in the case's caption. The caption still listed Aroostook County Federal Savings & Loan as the Plaintiff, leading to procedural errors that disadvantaged the Plaintiffs.

56. Despite these challenges, the Plaintiffs continued to pursue their case, seeking justice in a system that appeared biased against them.

57. On March 3, 2023, Justice B. Mallonee issued an order denying the Plaintiffs' amended counterclaim while the case was under federal jurisdiction, an action outside his legal authority and in violation of the Plaintiffs' due process rights. **(APPENDIX H)**

58. On March 13, 2023, Attorney J. William Druary Jr. submitted the void order to the federal court, misleading the court into remanding the case back to state court, where the Plaintiffs continued to face biased legal proceedings. **(APPENDIX I)**

59. The submission of this void order influenced the federal court's decision, leading to the remand on April 10, 2023, which deprived the Plaintiffs of federal protection and subjected them to continued judicial bias.

**Insurance Claim Deception and Legal Proceedings**

60. In October 2023, still reeling from the loss of their home due to the destruction caused by the bank's unauthorized actions, the Plaintiffs were informed by Attorney Richard Solman that an insurance claim had been filed on their behalf. Trusting this information, the Plaintiffs sold nearly all their possessions and returned to Maine to deal with their home. **(APPENDIX J)**

61. Upon arriving in Maine, the Plaintiffs discovered to their shock and dismay that no such insurance claim had been filed. This deception left them in an even more precarious position, exacerbating their financial and emotional distress.

62. Solman's misrepresentation added to the Plaintiffs' already overwhelming stress and uncertainty, forcing them to file multiple motions to compel Zurich Insurance to follow through with what had been promised. Despite their desperate situation, Zurich Insurance and the other Defendants continued to act with callous disregard for the Plaintiffs' well-being.

63. In December 2023, a hearing was held to address the Plaintiffs' motions. However, the only request granted during this conference was a verbal request for an interlocutory order. Even during this hearing, Attorney Solman admitted that the Plaintiffs were not informed of his request, as evidenced by their silence.

64. The Plaintiffs tried to bring up the violations of the Real Estate Settlement Procedures Act (RESPA) and the improper service of the bank's motion for summary judgment. However, shortly after the hearing, the judge issued an order that effectively ignored the Plaintiffs' concerns and upheld the bank's actions, further compounding the injustice they had faced.

65. On January 5, 2024, the Defendants requested another enlargement of time, which the Plaintiffs vehemently opposed. Despite their opposition, Judge Mallonee approved the extension, continuing the pattern of decisions that disproportionately favored the Defendants.

66. During this time, the Plaintiffs were grappling with the terminal illness of Sandy Marrett's mother, who was admitted to the ICU on February 6, 2024. Sandy remained by her mother's side until her passing on March 1, 2024. The Defendants, fully aware of the Plaintiffs' situation, aggressively continued their legal maneuvers, showing no regard for the Plaintiffs' grief and loss.

67. After her mother's passing, Sandy, overwhelmed and displaced, filed a Motion for Summary Judgment on the original counterclaim. The Plaintiffs argued that the Defendants had failed to respond substantively to their claims and that the prolonged litigation was a deliberate attempt to cover up the destruction of their home and other misconduct.

68. The Plaintiffs' Motion for Summary Judgment went unanswered by the Defendants, leading the Plaintiffs to file a Motion for Judgment as a Matter of Law. The Defendants opposed this motion, to which the Plaintiffs promptly replied, underscoring the Defendants' consistent avoidance of accountability.

69. On July 29, 2024, Judge Mallonee systematically denied all of the Plaintiffs' motions, including their motions for summary judgment, judgment as a matter of law, and sanctions for dilatory tactics. He did so by crossing out the words "so ordered" on the Plaintiffs' proposed orders and handwriting "denied." In contrast, the judge granted the bank's motions, further cementing the Plaintiffs' belief that the court was biased, and the process was rigged against them.

70. Shortly after these denials, the bank submitted a motion for sanctions and dismissal, attempting to portray the Plaintiffs as uncooperative and ignoring the significant personal hardships they had faced, including the illness and death of Sandy's mother. This final act of aggression by the bank exemplified the Defendants' relentless pursuit of their own interests at the expense of the Plaintiffs' rights and dignity.

### **CLAIM FOR RELIEF**

### **COUNT I**

### **Violation of Due Process Rights under 42 U.S.C. § 1983**

### **(Against Justice B. Mallonee, Aroostook County Federal Savings & Loan, and Zurich Insurance Company)**

71. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72. **Issuance of Void Order:** On March 3, 2023, Justice B. Mallonee issued an order denying the Plaintiff's amended counterclaim while the case was under federal jurisdiction, acting outside of his jurisdiction and violating the Plaintiff's right to due process under the Fourteenth Amendment. This act undermined the integrity of the judicial process, stripping the Plaintiff of federal protections and subjecting them to a biased state court.

73. **Submission of Void Order**: On March 13, 2023, Aroostook County Federal Savings & Loan, through its legal counsel, submitted this void state court order to the federal court with the intent of misleading the court and influencing the remand decision, further violating the Plaintiff's rights.

74. **Zurich Insurance Company's Complicity**: Zurich Insurance Company, by supporting the wrongful classification of the Plaintiff's property, contributed to the deprivation of the Plaintiff's due process rights. Zurich's actions further entrenched the judicial misconduct, denying the Plaintiff a fair opportunity to challenge the foreclosure.

75. **Injury**: The Plaintiff suffered significant financial losses, emotional distress, and the wrongful foreclosure of their home due to these violations.

76. **Legal Support:** *Monroe v. Pape, 365 U.S. 167 (1961)* established that state actors can be held liable under 42 U.S.C. § 1983 for constitutional violations. The Defendants' actions under the color of state law directly violated the Plaintiff's Fourteenth Amendment rights, which guarantee due process before deprivation of life, liberty, or property.

77. **Prayer for Relief**: The Plaintiff seeks declaratory and compensatory relief as outlined below.

## COUNT II

**Fraud and Misrepresentation**

**(Against Aroostook County Federal Savings & Loan, Zurich Insurance Company, Marden, Dubord, Bernier & Stevens, P.A. LLC, and Monaghan Leahy, LLP)**

78. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

79. **Misclassification of Property:** Aroostook County Federal Savings & Loan knowingly misclassified the Plaintiff's property as non-owner-occupied, allowing the Defendants to impose a force-placed insurance policy and initiate foreclosure proceedings in violation of RESPA.

80. **Judicial Complicity:** Justice B. Mallonee's refusal to acknowledge the correct occupancy status enabled the Defendants' fraudulent actions, contributing to the wrongful foreclosure.

81. **Zurich Insurance Company's Role**: Zurich issued and maintained the insurance policy based on this misclassification, causing financial harm to the Plaintiff.

82. **Injury**: The Plaintiff suffered financial losses, emotional distress, and the wrongful foreclosure of their home as a result of the fraudulent actions of the Defendants.

83. **Legal Support:** *Coffman v. Trickey, 884 F.2d 1057 (8th Cir. 1989)* supports the premise that a party may recover damages for fraud when there is intentional misrepresentation of a material fact that the other party relied upon, resulting in damages.

84. The Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and any other relief the Court deems just and proper.

## COUNT III

### Violation of 12 C.F.R. § 1026.3 (Misclassification of Owner Occupancy)

### (Against Aroostook County Federal Savings & Loan and Zurich Insurance Company)

85.  The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

86.  **Wrongful Classification:** The Defendants wrongfully classified the Plaintiff's property as non-owner-occupied in violation of 12 C.F.R. § 1026.3, despite clear evidence of the Plaintiff's intent to occupy the property for at least 14 days within the coming year.

87.  **Impact on Plaintiff's Rights**: This misclassification allowed the Defendants to avoid RESPA protections and impose unnecessary financial burdens on the Plaintiff, leading to the wrongful foreclosure.

88.  **Injury**: The Plaintiff incurred inflated insurance premiums, financial losses, and emotional distress as a direct result of the wrongful classification.

89.  The Plaintiff seeks compensatory damages for the financial losses incurred due to the wrongful classification, statutory damages, punitive damages, and any other relief the Court deems just and proper.

## CLAIM IV

### Violation of the Real Estate Settlement Procedures Act (RESPA)

### (Against Aroostook County Federal Savings & Loan and Zurich Insurance Company)

90.  The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

91. **RESPA Violations:** The Defendants violated RESPA by failing to provide proper notice and by wrongfully classifying the property as non-owner-occupied before imposing a force-placed insurance policy.

92. **Zurich's Non-Compliance:** Zurich Insurance Company issued and maintained the insurance policy without proper due diligence, exacerbating the Plaintiff's financial burden.

93. **Injury**: The Plaintiff suffered financial losses, emotional distress, and the wrongful foreclosure of their home due to these violations.

94. **Legal Support:** The Consumer Financial Protection Bureau's (CFPB) official interpretations of 12 C.F.R. § 1026.3 state that if a creditor has reason to believe that a property will be occupied by the owner for 14 days or more in a year, it should not classify the property as non-owner occupied. This supports the argument that the misclassification was a violation of federal law.

95. The Plaintiff seeks compensatory damages, statutory damages under RESPA, and any other relief the Court deems just and proper.

<u>**COUNT V**</u>

**Breach of Contract**

**(Against Aroostook County Federal Savings & Loan)**

96. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97. **Breach by Premature Foreclosure:** The Defendant breached the mortgage contract by initiating foreclosure proceedings after only 75 days of delinquency, in violation of RESPA's 120-day rule.

98. **Failure to Consider Restructuring:** The Defendant also breached the contract by failing to consider the Plaintiff's proposal to restructure the mortgage to generate income, leading directly to the wrongful foreclosure.

99. **Injury**: The Plaintiff suffered financial harm, emotional distress, and the loss of their home due to these breaches.

100. **Legal Support:** The *Restatement (Second) of Contracts § 235(2)* states that when a party fails to perform a contractual obligation, they are in breach of the contract. This supports the Plaintiff's claim that the Defendant's actions constituted a clear breach.

101. **Prayer for Relief**: The Plaintiff seeks compensatory damages, and any other relief deemed appropriate by the Court.

**COUNT VI**

**Abuse of Process**

**(Against Marden, Dubord, Bernier & Stevens, P.A. LLC, and Monaghan Leahy, LLP)**

102. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

103. **Submission of Void Order**: The Defendants abused the judicial process by submitting a void state court order to the federal court with the intent of misleading the court into remanding the case back to state court. The Defendants knew the order was void but used it to manipulate the legal proceedings to the detriment of the Plaintiff.

104. **Improper Use of Legal Process**: The Defendants' actions were designed to harass and burden the Plaintiff, forcing them to navigate a biased legal system and incur additional legal costs and emotional distress. This abuse of process was a deliberate attempt to coerce the Plaintiff into unfavorable legal positions.

105. **Injury:** This abuse of process resulted in the wrongful remand of the Plaintiff's case to state court, leading to continued judicial bias, financial losses, and emotional distress. The Plaintiff was forced to endure prolonged litigation, increasing their legal costs and suffering. **(APPENDIX K1-K13)**

106. **Legal Support:** *Simon v. Navon, 71 F.3d 9 (1st Cir. 1995)* supports the claim of abuse of process, where legal proceedings are misused for purposes other than those intended by law, resulting in harm to the other party.

107. The Plaintiff seeks compensatory damages for the financial and emotional harm caused by the Defendants' abuse of process, punitive damages, and any other relief the Court deems just and proper.

## COUNT VII

### Civil Conspiracy

### (Against All Defendants)

108. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

109. **Conspiracy to Defraud**: The Defendants engaged in a civil conspiracy to misclassify the Plaintiff's property, impose a force-placed insurance policy, and submit a void order to the federal court, all with the intent to defraud the Plaintiff and manipulate the judicial process.

110. **Coordination of Actions**: The Defendants coordinated their actions to deprive the Plaintiff of their property and legal rights, leading to the wrongful foreclosure of the Plaintiff's home and significant financial and emotional harm.

111. **Injury:** The civil conspiracy caused the Plaintiff to lose their home through wrongful foreclosure, suffer financial losses, and endure severe emotional distress. The Plaintiff was subjected to an unjust and biased legal process, further exacerbating their suffering.

112. **Legal Support:** *Dennis v. Sparks, 449 U.S. 24 (1980)* supports the claim of civil conspiracy, establishing that private parties who conspire with state actors to deprive others of constitutional rights can be held liable under 42 U.S.C. § 1983. The coordinated actions of the Defendants to defraud the Plaintiff fall squarely within this precedent.

113. The Plaintiff seeks compensatory damages, punitive damages, and any other relief the Court deems just and proper.


## COUNT VIII

### Breach of Fiduciary Duty

### (Against Aroostook County Federal Savings & Loan, Marden, Dubord, Bernier & Stevens, P.A. LLC, and Monaghan Leahy, LLP)

114. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

115. **Fiduciary Breach by Misclassification and Insurance Claim:** Aroostook County Federal Savings & Loan breached its fiduciary duty by wrongfully classifying the property, opening an insurance claim without the Plaintiff's consent, and pursuing foreclosure based on this wrongful classification.

116. **Fiduciary Breach by Legal Counsel:** Marden, Dubord, Bernier & Stevens, P.A. LLC, and Monaghan Leahy, LLP breached their fiduciary duties by submitting a void order to

the federal court and failing to act in the Plaintiff's best interests, further exacerbating the Plaintiff's financial and emotional harm.

117. **Injury:** The breach of fiduciary duty resulted in the wrongful foreclosure of the Plaintiff's home, financial losses, and emotional distress. The Plaintiff suffered additional harm due to the Defendants' failure to act in the Plaintiff's best interests.

118. **Legal Support:** *Burtch v. Ganz, 741 F. Supp. 139 (E.D. Pa. 1990)* establishes that a fiduciary duty exists where one-party places trust and confidence in another, which the Defendants violated by acting in their own interests rather than the Plaintiff's.

119. The Plaintiff seeks compensatory damages for the financial and emotional harm caused by the breach of fiduciary duty, punitive damages, and any other relief the Court deems just and proper.

## COUNT IX

### Negligence

### (Against Progressive Realty)

120. The Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121. **Negligent Property Management:** Progressive Realty breached its duty of care by failing to properly manage the Plaintiff's property, resulting in substantial water damage and the eventual destruction of the home. Progressive Realty's negligence in monitoring the property and communicating with the Plaintiff directly contributed to the Plaintiff's losses.

122. **Breach of Duty**: Progressive Realty breached this duty by failing to adequately manage the property, allowing substantial water damage to occur due to their negligent actions,

and failing to inform the Plaintiff in a timely manner about the ongoing issues. This includes their failure to properly monitor the condition of the property after water service was restored without the Plaintiff's consent.

123. **Causal Connection to Harm**: As a direct result of Progressive Realty's negligence, the Plaintiff's property suffered significant water damage, ultimately leading to the destruction of the home and further financial losses. Progressive Realty's failure to communicate and manage the situation responsibly contributed to the Plaintiff's inability to mitigate the damage.

124. **Injury:** The Plaintiff suffered extensive property damage, financial losses associated with the destruction of their home, and the costs of displacement. The emotional distress caused by the loss of their home and the mismanagement by Progressive Realty further compounded their suffering. (**Appendix L**)

125. **Legal Support:** *In re Atlantic Fin. Mgmt., Inc. Sec. Litig., 784 F.2d 29 (1st Cir. 1986)* highlights that a claim for negligence arises when there is a duty of care, breach of that duty, and causation leading to damages. The negligence of Progressive Realty in managing the Plaintiff's property clearly meets these criteria.

126. The Plaintiff seeks compensatory damages for the property damage, financial losses, and emotional distress caused by Progressive Realty's negligence, and any other relief the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, acting pro se, respectfully requests that this Court grant the

following relief:

1. **Compensatory Damages:**

   - Award compensatory damages in an amount to be determined by the Court

     sufficient to cover the financial losses, emotional distress, and other harm suffered

     by the Plaintiff as a direct result of the Defendants' unlawful actions. This

     includes damages for the wrongful foreclosure and the profound impact on the

     Plaintiff's relationships, health, and overall quality of life.

2. **Punitive Damages:**

   - Award punitive damages in an amount sufficient to punish the Defendants for

     their willful, malicious, and fraudulent conduct, and to deter similar actions by

     others in the future. These damages should reflect the need for accountability and

     reform in the practices of financial institutions, insurance companies, and legal

     entities, particularly in small, vulnerable communities.

3. **Declaratory Judgment:**

   - Issue a declaratory judgment that the actions of the Defendants, including the

     wrongful classification of the Plaintiff's property and the submission of a void

     order to the federal court, violated the Plaintiff's rights and were in breach of

     federal and state law.

4. **Injunctive Relief:**

- Grant injunctive relief requiring the Defendants to cease any ongoing or future actions that would further harm the Plaintiff or similarly situated individuals, and to take corrective measures to prevent future violations of the law.

5. **Statutory Damages:**

- Award statutory damages as provided under the Real Estate Settlement Procedures Act (RESPA) and other applicable federal and state laws, ensuring that the Defendants are held accountable for their regulatory violations.

6. **Recognition of Personal Sacrifices:**

- Acknowledge the irreplaceable losses suffered by the Plaintiff, including the loss of time with family, the deterioration of relationships, and the inability to lead a normal, happy life. The Plaintiff seeks recognition that no amount of money can adequately compensate for these sacrifices, and requests that the Court's judgment reflect the severity of these intangible losses.

7. **Community Impact and Systemic Reform:**

- Recognize the broader implications of this case for the community of Caribou, Maine, and similar small towns across America. The Plaintiff requests that the Court's judgment serve as a catalyst for systemic reform, ensuring that no individual or community is subjected to the unchecked abuses of powerful institutions.

8. **Further Relief:**

- Grant such other and further relief as the Court deems just, proper, and equitable in the interests of justice and fairness.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

## CONCLUSION

This case is not just a legal dispute over property—it is a fight for justice against the unchecked power and systemic corruption that has devastated our family and countless others in communities like Caribou, Maine. For too long, powerful institutions—banks, brokers, insurance companies, and the judicial system itself—have exploited the vulnerable, acting with impunity under the cover of local influence and bias.

We have endured relentless harassment, financial ruin, and the unimaginable loss of our home, which was more than just a structure; it was a sanctuary, a place where we built our lives, raised our children, and held onto hope even in the face of overwhelming adversity. Yet, through the willful actions of those who should have protected us, we have been stripped of everything—our home, our peace, our dignity.

Despite these hardships, we have continued to stand tall, driven by the belief that justice must prevail, that no one is above the law, and that the truth will ultimately come to light. We are not just fighting for ourselves but for every person who has ever been crushed under the weight of corrupt practices and systemic abuse.

We respectfully ask this Court to recognize the profound impact of the Defendants' actions—not just on us, but on the broader community—and to deliver a judgment that reflects the gravity of these injustices. This case is an opportunity for the Court to send a clear message that the law will protect the vulnerable, that truth will prevail over deception, and that justice is not for sale.

We seek not only compensation for our immense losses but also the assurance that what happened to us will never happen to anyone else. This Court's review of the appendixes attached hereto, including key correspondence, legal filings, and evidence of damages, will reveal the full extent of the Defendants' misconduct. We ask this Court to grant the relief we have requested, to restore our faith in the legal system, and to stand with us in the pursuit of justice.

Respectfully submitted,

Date: August 23, 2024

Respectfully Submitted,

/s/ David T Marrett
/s/ Sandy J Marrett
David T. Marrett
Sandy J. Marrett
184 Vineland Avenue
East Longmeadow, MA 01028
(843) 471-6099
sandymarrett@proton.me

**IMPORTANT NOTICE**

**Replies must be filed no later than 21 days after perfection of service. Failure to file an opposition within 21 days of receiving this Complaint will be deemed a waiver of all objections to this Complaint.**

**CERTIFICATE OF SERVICE**

The undersign certifies that on August 23, 2024, a

1.  Complaint,

2.  and a Certificate of Service was filed electronically with the Clerk of Court using the

    CM/ECF system which will send notifications of such filings to all parties of record.

Dated: August 23, 2024

/s/ David T Marrett
/s/ Sandy J Marrett
David T. Marrett
Sandy J. Marrett
184 Vineland Avenue
East Longmeadow, MA 01028
Telephone: (843) 471-6099
Email: sandymarrett@proton.me

## Names and Address' of Defendants

**Aroostook County Federal Savings & Loan, and Beth Henderson**
43 High Street
Caribou, Maine 04736

Attorney of Record for Aroostook County Federal Savings & Loan, and Beth Henderson
Solman & Hunter, P.A.
Richard Solman
709 Main Street
P.O. Box 665
Caribou, Maine 04736
(207) 496-3031
rsolman@solmanhunter.com

Justice B. Mallonee
Penobscot Superior Court
78 Exchange Street
Bangor, Maine 04401
(207) 561-2300

Zurich North America
P.O. Box 968051
Schaumburg, IL 60196-8051
(800) 241-7570
Attorney Marc Stolzenberg
marc.stolzenberg@zurichna.com

Marden, Dubord, Bernier & Stevens, P.A. LLC
325E Kennedy Memorial Dr Unit 1
Waterville, Maine 04901
(207) 872-0112

Monaghan Leahy, L.L.P
2 Monument Sq Ste 401
Portland, Maine 04101
(207) 774-3906

Progressive Realty
Cathy Duffy
45 Bennett Drive
Caribou, Maine 04736
(207) 498-3848